**DRUMMOND LAW FIRM**
Craig W. Drummond, Esq.
Nevada Bar No. 11109
Joseph A. Tutone, Esq.
Nevada Bar No. 16333
3325 West Sahara Avenue
Las Vegas, Nevada 89102
T: (702) 366-9966
(702) CAPTAIN
F: (702) 508-9440
Craig@DrummondFirm.com
Joey@DrummondFirm.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MUHAMMAD BIN MUSA ALI, individually; )<br><br>Plaintiff, )<br><br>vs. )<br><br>LOYA INSURANCE COMPANY, a foreign )<br>corporation; BRIANNA WALTON, an )<br>individual; DOES I-V; and ROE )<br>CORPORATIONS VI-X, inclusive, )<br><br>Defendants. )<br>_____ ) | Case No.:   2:24-cv-01949-CDS-EJY<br><br><br>**PLAINTIFF'S MOTION TO COMPEL**<br>**PRODUCTION OF DOCUMENTS** |

COMES NOW Plaintiff MUHAMMAD BIN MUSA ALI by and through his attorney of record, CRAIG W. DRUMMOND, ESQ. and his attorneys at the DRUMMOND LAW FIRM, and and for the reasons set forth in the accompanying memorandum of law moves for an order compelling Defendant LOYA INSURANCE COMPANY to produce certain documents in this case.

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

DATED this 11th day of July, 2025

**DRUMMOND LAW FIRM**

By: _____//SIGNED CWD//_____
Craig W. Drummond, Esq.
Nevada Bar No. 11109
Joseph A. Tutone, Esq.
Nevada Bar No. 16333
3325 West Sahara Avenue
Las Vegas, Nevada 89102
*Attorneys for Plaintiff*

**I.**

**DECLARATION OF COUNSEL IN SUPPORT OF MOTION
AND CONFIRMING MEET AND CONFER**

1.) I am the lead attorney of record for the Plaintiff, licensed to practice law in Nevad and maintaining an office at the Drummond Law Firm in Las Vegas, Nevada.

2.) This motion concerns a discovery dispute, specifically certain responses to Defendant Loya Insurance Company's responses to Requests for Production of Documents. The responses were received on March 19, 2025. *See* Exhibit 1.

3.) The FRCP 30(b)(6) deposition of Defendant Loya occurred on May 27, 2025. Following review of the transcript of that deposition, I reviewed the transcript as it became evident that certain probative discovery documents had not been produced by the Defendant. *See* Exhibit 2.

4.) MEET AND CONFER: Prior to filing this motion, I reached out to lead counsel for Defendant Loya, Mr. Bradley Johnson. Thereafter, I conferred telephonically with Mr. Johnson, on July 25, 2025 at 2:00pm prior.

5.) During the July 25, 2025, the call was productive with both sides stating their position. Further, as a result of that conference, I agreed to narrow certain requests related to the policies/standards in effect and applicable to the processing of the underlying claim in this case. Further, I agreed to narrow other requests applicable to the present claim and case, irrespective if they were tailored to Nevada or not. At the end of the first call, certain

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

discovery matters remained and Mr. Johnson requested one (1) week to further confer with his client. The request was agreed-to and a follow-up meet and confer was set for Thursday, July 3, 2025 at 9am.

6.) During the second telephonic meet and confer on July 3, 2025, undersigned and Mr. Johnson further walked through the remaining disputed discovery matters. Undersigned agreed to almost all of the resolutions as to the discovery disputes and Mr. Johnson agreed to provide certain additional documents related to claims manuals and policies, as well as tables of contents. I agreed to further limit/tailor Requests for Production No. 40-45 to only cases/claims that did not resolve pre-litigation. As such, Defendant Loya would only need to search for and produce the responsive claims involving litigation against their insured, or litigation against Loya.

7.) It is undersigned's belief that such would drastically reduce the amount of effort expended to review such claims as to those only involving litigation, specific to five (5) years before the subject incident, and to only Nevada.  At that point, Defendant Loya requested more time for counsel to confer with the Defendant regarding the remaining Request for Production No. 40-45.

8.) During the July 3, 2025 call, I also agreed to withdraw certain requests and Defendant Loya agreed to provide certain additional documents.

9.) On July 8, 2025 a third telephonic meet and confer was held between myself and Mr. Johnson. Unfortunately, as to the remaining Requests for Production No. 40-45, even after attempts at tailoring, the parties could not come to a resolution. Both sides agreed that they had met and conferred at length and we needed the Court's guidance.

10.) The remaining discovery disputes are the basis for the present motion.

11.) Plaintiff is requesting that Defendant immediately produce the requested  discovery as the information and documents requested are relevant and probative evidence under FRCP 26(b)(1). Further, the requested information and documents are in possession of Defendant Loya Insurance Company.

12.) I sign this declaration in accordance with NRS §53.045 and under penalty of perjury.

_____//SIGNED CWD//_____
CRAIG W. DRUMMOND
Nevada. Bar No. 11109

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

## II.

## POINTS & AUTHORITIES

On November 20, 2022, Plaintiff ALI was the driver/operator of a 1994 Jaguar XJ at or near Silverado Ranch Boulevard and IR15 northbound on ramp in Las Vegas, Clark County, Nevada. *See* CMECF #1, Document 1-2 (Exhibit A – Complaint) para. 10. Original Defendant WALTON was the driver/operator/ owner of a 2017 Chevrolet Cruz at or near Silverado Ranch Boulevard and IR15 northbound on ramp in Las Vegas, Clark County, Nevada. *Id*. at para. 11. Defendant WALTON failed to keep a proper lookout, failed to operate her vehicle reasonably and safely, and failed to use due care, causing the front of her vehicle to strike the right rear of Plaintiff's vehicle. *Id*. at para. 12.

Plaintiff filed suit related to the underlying collision against original Defendant WALTON on August 23, 2023 and served the Complaint to Defendant WALTON through the Nevada Department of Motor Vehicles on September 14, 2023 in A-23-876478-C. *Id*. at para. 21. During litigation, Defendant WALTON did not timely respond to any of the written discovery. *Id*. at para. 24.

In addition to failing to pay for the property damage during litigation, Defendant WALTON failed to participate in defending her case. Defendant WALTON failed to participate in discovery, failed to appear for hearings, failed to oppose motions, and failed to appear at Plaintiff's Motion for Default Judgment. Most notably, Defendant WALTON was continually represented by counsel throughout the state court case.

During litigation, Plaintiff ALI obtained a Judgment against Defendant WALTON for $110,801.42. *Id*. at para. 27. Further, pursuant to NRS 21.32 and *Gallegos v. Malco Enterprises of Nevada, Inc*., 127 Nev. 579, 255 P.3d 1287 (2011) Plaintiff ALI was judicially assigned Defendant WALTON's bad faith rights against her insurance carrier covering the November 20, 2022 collision, Defendant LOYA. *Id.* The current litigation includes bad faith claims against LOYA.

Specifically, the Complaint alleges the Defendant LOYA failed to follow NRS 485.3091(5). *Id*. at 29. Further, among other allegations, that Defendant LOYA breached their contract and acted in bad faith when they:

…failed to protect their insured - the "original Defendant," failed to reasonably value Plaintiff's claim, failed to resolve Plaintiff's claim within coverage limits, failed to hire competent defense counsel, failed to respond to written discovery, failed to

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

reasonably defend the underlying lawsuit, and exposed original Defendant WALTON to a Judgment, and as of the filing of this Complaint failed to pay/satisfy the outstanding Judgment.

*Id*. at para. 36, 59, 66.

Defendant LOYA responds that their actions were somehow justified because Ms. Walton "forfeited her coverage." *See* Exhibit 3, #8. Specifically:

The policy contains numerous terms and conditions that Ms. Walton was required to comply with in order to be entitled to coverage under her policy. This includes, but is not limited to, the Duties After an "Accident" or Loss provision.

Loya sent Ms. Walton several reservation of rights letters informing her of her obligations under the policy and the consequences if she failed to fulfill them. Specifically, Loya informed her of her duty to cooperate. Despite Loya's many letters, Ms. Walton failed to comply with those duties. In addition, Loya regularly called Ms. Walton to discuss the claim and her obligations under the policy, but she did not answer the phone and she never returned the voicemails that Loya left for her. For these reasons, Ms. Walton failed to cooperate in her own defense. Her failure to cooperate, as required by the terms and conditions of the policy, resulted in Loya being unable to defend the lawsuit filed against her. Therefore, a default judgment was entered against her. **Because Ms. Walton failed to comply with her duties and obligations under the policy, she forfeited any coverage she otherwise would have been entitled to as it relates to the November 20, 2022 accident.**

In addition, pursuant to Fed.R.Civ.P. 33(d), Loya directs the plaintiff to the copy of Loya's claim file and the copy of the policy, which have both been produced by Loya in connection with its responses to plaintiff's requests for production of documents, from which additional information responsive to this interrogatory may be derived or ascertained.

(bold emphasis added)

The issue with the "forfeiting" coverage argument is that all of the actions alleged by Defendant LOYA concerning their insured WALTON occurred after the collision. NRS 485.3091(5) holds as follows:

Every motor vehicle liability policy is subject to the following provisions which need not be contained therein: (a)  The liability of the insurance carrier with respect to the insurance required by this chapter becomes absolute whenever injury or damage covered by the policy occurs. The policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

occurrence of the injury or damage. No statement made by the insured or on behalf of the insured and no violation of the policy defeats or voids the policy.

Given NRS 485.3091(5), irrespective if WALTON cooperated with them, the underlying policy was absolute and they had a requirement to act in good faith and evaluate and attempt to resolve the claim of Plaintiff ALI. Defendant LOYA's indemnity obligations remained. Period.

Nevada is an absolute-liability jurisdiction as it relates to motor vehicles. *See Torres v. Nevada Direct Insurance Co.*, 131 Nev. Adv. Op. 54 (2015) (holding that "no post injury violation of a policy will release the insurer under the absolute-liability provision" and that an insured's "**noncompliance with the notice and cooperation clauses of the policy does not void NDIC's indemnity obligations**.") (bold emphasis added). This is black letter Nevada law. Because of NRS 485.3091(5), the indemnity obligations remain, irrespective of cooperation following a collision.

In this case, Plaintiff ALI has attempted to learn whether Defendant LOYA's actions in this case are unique and this "forfeit" type of argument has been used in the past. Specifically, if they have other cases where they failed to follow reasonable standards for promptly investigating and processing insurance claims based on alleged post-collision failure to cooperate. Further, to learn whether their misconduct replicates prior transgressions. Further, whether the bad faith allegations involve companywide or systemic practices. Further, discovery of the insurer's intent, for purposes of punitive damages as committing certain acts "with such frequency as to indicate a general business practice."

With the above discovery needed, Plaintiff ALI sent narrowly tailored production requests to Defendant ALI specific to their "forfeiture" representation and attempting to defend their actions based on WALTON's post-collision actions. The following are the tailored requests and responses:

REQUEST NO. 40:
Please produce a copy of the claim, letter or demand made against you where your insured, or their counsel, alleged that Defendant LOYA INSURANCE COMPANY failed to follow NRS 485.3091(5)(a) attempted to cancel or annul an insurance policy based on a post-collision violation of the policy. [This request is limited and tailored to the five (5) years preceding November 20, 2022 to present and the jurisdiction of the State of Nevada.]

RESPONSE TO REQUEST FOR PRODUCTION NO. 40:
Objection. This request is vague and ambiguous, including its use of the undefined phrases "claim, letter or demand" and "post-collision violation of the policy." The interrogatory is also overbroad, unduly burdensome, and harassing in

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

that it is not limited to the issues raised in plaintiff's specific claim, which did not involve any attempt to cancel or annul the insured's policy. Moreover, because Loya has issued payment to plaintiff for the applicable policy limit, this request seeks documents that are not relevant, not likely to lead to the discovery of relevant evidence, and not likely to lead to the discovery of evidence that is admissible at trial. Moreover, Loya has no readily available means of identifying or gathering the potentially responsive documents. Thus, the burden of responding to this request outweighs the minimal (if any) probative value of any responsive documents. Finally, this request seeks private documents related to insurance policies and/or claims of third parties who are not involved in this litigation.

REQUEST FOR PRODUCTION NO. 41:

Please provide a copy of the letter or email where LOYA INSURANCE COMPANY represented to their insured that they were cancelling or annulling a motor vehicle lability policy for something alleged to have occurred after the occurrence of the injury or damage. [This request is limited and tailored to the five (5) years preceding November 20, 2022 to present and the jurisdiction of the State of Nevada.]

RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

Objection. This request is vague and ambiguous, including its use of the undefined phrases "represented to their insured" and "something alleged to have occurred after the occurrence of the injury or damage." The interrogatory is also overbroad, unduly burdensome, and harassing in that it is not limited to the issues raised in plaintiff's specific claim, which did not involve any attempt to cancel or annul the insured's policy. Thus, this request seeks documents that are not relevant, not likely to lead to the discovery of relevant evidence, and not likely to lead to the discovery of evidence that is admissible at trial. Moreover, Loya has no readily available means of identifying or gathering any potentially responsive documents. Thus, the burden of responding to this request outweighs the minimal (if any) probative value of any potentially responsive documents. Finally, this request seeks private documents related to insurance policies and/or claims of individuals who are not party to this litigation.

REQUEST FOR PRODUCTION NO. 42:

Please provide a copy of the letter or email where LOYA INSURANCE COMPANY represented to a third-party that they were cancelling or annulling a motor vehicle lability policy for something alleged to have occurred after the occurrence of the injury or damage. [This request is limited and tailored to the five (5) years preceding November 20, 2022 to present and the jurisdiction of the State of Nevada.]

RESPONSE TO REQUEST FOR PRODUCTION NO. 42:

Objection. This request is vague and ambiguous, including its use of the undefined phrases "represented to a third-party" and "something alleged to have occurred after the occurrence of the injury or damage." The interrogatory is also overbroad, unduly burdensome, and harassing in that it is not limited to the issues raised in plaintiff's specific claim, which did not involve any attempt to cancel or

annul the insured's policy. This request also lacks foundation and is unintelligible as phrased because Loya cannot cancel or annul a third-party's liability policy since they did not contract with Loya. Thus, this request seeks documents that are not relevant, not likely to lead to the discovery of relevant evidence, and not likely to lead to the discovery of evidence that is admissible at trial. Moreover, Loya has no readily available means of identifying or gathering any potentially responsive documents. Thus, the burden of responding to this request outweighs the minimal (if any) probative value of any responsive documents. Finally, this request may seek private documents related to insurance policies and/or claims of individuals who are not party to this litigation.

REQUEST FOR PRODUCTION NO. 43:
Please provide a copy of the letter or email where LOYA INSURANCE COMPANY represented to their insured that they were not providing coverage based on a lack of cooperation or communication after the occurrence of the injury or damage. [This request is limited and tailored to the five (5) years preceding November 20, 2022 to present and the jurisdiction of the State of Nevada.]

RESPONSE TO REQUEST FOR PRODUCTION NO. 43:
        Objection. This request is vague and ambiguous, including its use of the undefined phrases "represented to their insured" and "lack of cooperation or communication after the occurrence of the injury or damage." The interrogatory is also overbroad, unduly burdensome, and harassing in that it is not limited to type of claim and factual issues in plaintiff's specific claim. Moreover, while Loya provided several reservation of rights to deny coverage, it never sent Ms. Walton a coverage denial letter. Thus, this request seeks documents that are not relevant, not likely to lead to the discovery of relevant evidence, and not likely to lead to the discovery of evidence that is admissible at trial. Moreover, Loya has no readily available means of identifying or gathering any potentially responsive documents. Thus, the burden of responding to this request outweighs the minimal (if any) probative value of any potentially responsive documents. Finally, this request seeks private documents related to insurance policies and/or claims of individuals who are not party to this litigation.

REQUEST FOR PRODUCTION NO. 44:
Please provide a copy of the letter or email where LOYA INSURANCE COMPANY represented to a claimant of their counsel that they were not providing coverage for a collision based on a lack of cooperation or communication with their insured after the occurrence of the injury or damage. [This request is limited and tailored to the five (5) years preceding November 20, 2022 to present and the jurisdiction of the State of Nevada.]

RESPONSE TO REQUEST FOR PRODUCTION NO. 44:
        Objection. This request is vague and ambiguous, including its use of the undefined phrases "represented to a claimant or their counsel" and "lack of cooperation or communication with their insured after the occurrence of the injury

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

or damage." The request is also overbroad, unduly burdensome, and harassing in that it is not limited to type of claim and factual issues in plaintiff's specific claim. Moreover, while Loya provided several reservation of rights to deny coverage, it never sent Ms. Walton a coverage denial letter.. Thus, this request seeks documents that are not relevant, not likely to lead to the discovery of relevant evidence, and not likely to lead to the discovery of evidence that is admissible at trial. Moreover, Loya has no readily available means of identifying or gathering any potentially responsive documents. Thus, the burden of responding to this request outweighs the minimal (if any) probative value of any potentially responsive documents. Finally, this request seeks private documents related to insurance policies and/or claims of individuals who are not party to this litigation.

REQUEST FOR PRODUCTION NO. 45:

Please produce a copy of the arbitration findings, where an insured, or their counsel, alleged that Defendant LOYA INSURANCE COMPANY wrongfully or improperly denied the existence of personal automobile insurance coverage following a collision. This includes any such findings irrespective of whether a lawsuit was filed related to the dispute. [This request is limited and tailored to the five (5) years preceding November 20, 2022 to present and the jurisdiction of the State of Nevada.]

RESPONSE TO REQUEST FOR PRODUCTION NO. 45:

Objection. This request is vague and ambiguous, including its use of the undefined phrases "arbitration findings" and "wrongfully or improperly denied the existence of personal automobile insurance coverage following a collision." The request is also overbroad, unduly burdensome, and harassing in that it is not limited to type of claim and factual issues in plaintiff's specific claim, which did not involve a dispute over whether plaintiff's bodily injury claim was covered while that claim was pending. Moreover, because Loya provided Ms. Walton with a full defense and subsequently paid the full policy limit, no formal coverage denial was required. Thus, this request seeks documents that are not relevant, not likely to lead to the discovery of relevant evidence, and not likely to lead to the discovery of evidence that is admissible at trial. Moreover, Loya has no readily available means of identifying or gathering any potentially responsive documents. Thus, the burden of responding to this request outweighs the minimal (if any) probative value of any potentially responsive documents. Finally, this request seeks private documents related to insurance policies and/or claims of individuals who are not party to this litigation.

*See* Exhibit 1.

As outlined in the above Declaration of Counsel, Plaintiff ALI further agreed to tailor the above requests to those only cases/claims that did not resolve pre-litigation. As such, Defendant Loya would only need to search for and produce the responsive claims involving litigation against their insured, or litigation against Loya. *See supra*. Declaration ¶ 6.

Apparently, Defendant LOYA chooses to not track claims against them for fraud, breach of fiduciary duties, breach of the duty of good faith and fair dealing, and breach of statutory duties. Defendant LOYA represents that they have no idea how many other times they have been accused of other bad faith type actions.

> Q. Let's break it down. As to claims, they don't have those documents related to the claims brought against them?· Is that Loya's position specific to claims?
> A. No, sir.
> Q. And specific to legal actions, the phrase they use, or you used in your interrogatory response, they don't have access to the documents for legal issues brought against them for fraud, breach of fiduciary duties, breach of the duty of good faith and fair dealing, and breach of statutory duties; is that Loya's testimony?
> A. Yes, sir.· There is no database, and there is no list.

*See* Exhibit 2, p.92:23-93:11.

To be clear, Plaintiff ALI is not requesting a database or list. Defendant LOYA has chosen, as a business decision, to not create a database or list. Such is interesting and concerning. However, the Plaintiff's request in this case is for documents. Irrespective of whether there is a database or list, Defendant LOYA should be compelled to produce the underlying documents.

FRCP 26(b)(1) governs the scope of discovery.  It states "unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable."

FRCP 26 also governs the duty to disclose witnesses and evidence.  FRCP 26(a)(1)(ii) and (iii) require a party produce a copy or a description and location of all information and tangible things that a party has in its possession or control.

Bad faith includes a claim that there was an actual or implied awareness of the absence of a reasonable basis for denying benefits of the insurance policy.  *See Allstate v. Miller,* 212 P.3d 318, 324 (Nev. 2009).  Nevada essentially defines bad faith as 1) an insurer's denial or refusal to pay an insured's claim; 2) without any reasonable basis; and 3) the insurer's knowledge or awareness of the lack of any reasonable basis to deny coverage, or the insurer's reckless disregard as to the

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

unreasonableness of the denial. *See e.g. Schumaker v. State Farm Fire & Cas. Co.*, 467 F.Supp.2d 1090 (D. Nev. 2006).

Here, Defendant LOYA does not dispute that there was a valid policy, but rather that: **"Because Ms. Walton failed to comply with her duties and obligations under the policy, she forfeited any coverage she otherwise would have been entitled to as it relates to the November 20, 2022 accident."** *See* Exhibit 3, #8. However, under Nevada law, the failure to cooperate post collision cannot void Defendant LOYA's insurance indemnity obligations. *See* NRS 485.3091(5) and *Torres v. Nevada Direct,* supra.

Thus, probative discovery is whether Defendant LOYA has other cases where they failed to follow reasonable standards for promptly investigating and processing insurance claims based on alleged post-collision failure to cooperate. Further, to learn whether their misconduct replicates prior transgressions. Further, whether the bad faith allegations involve companywide or systemic practices. Further, discovery of the insurer's intent, for purposes of punitive damages as committing certain acts "with such frequency as to indicate a general business practice."

The actions/inactions by Defendant LOYA in this instance continued during the underlying litigation. The duty of good faith and fair dealing that an insurance company owes does not end with the commencement of litigation and thus continues through trial. *See e.g., Parsons ex rel. Parsons v. Allstate Ins. Co.,* 165 P.3d 809, 815 (Colo.App.2006) (the tort of bad faith breach of an insurance contract encompasses "all of the dealings between the parties, including conduct occurring after the arbitration procedure"); *Knotts v. Zurich Ins. Co.,* 197 S.W.3d 512, 517 (Ky. 2006) (insurer is obligated to deal in good faith in both pre- and post-litigation activities); *O'Donnell v. Allstate Ins. Co.,* 734 A.2d 901, 906 (Pa.Super.Ct.1999) (bad faith suits are not restricted to the denial of claims, but rather may extend to the misconduct of an insurer during the pendency of litigation).

Defendant LOYA never even paid for Plaintiff ALI's property damage claim pre-litigation or during litigation against their insured:

> THE COURT FURTHER FINDS that during the entire period of this case, the Defendant chose not to pay for repairs of the Plaintiff's vehicle, that the Plaintiff has not had his vehicle repaired, has been paying storage fees, and has lost the ability to use his vehicle. The undisputed estimate for repair was $7,916.42.

*See* CMECF #1, Document 1-2 (Exhibit A – Complaint) para. 26.

An insurer must adopt and follow reasonable standards for promptly investigating and processing insurance claims. NRS 686A.310(1)(c). Generally, investigations must be completed

within 30 days of receiving notice of a claim, unless that timeframe is not reasonable under the circumstances. NAC 686A.670(2). Tactics such as an unreasonable failure to investigate and unreasonable delay can give rise to an inference of bad faith. *See e.g. Farmers Home Mut. Ins. v. Fiscus,* 725 P.2d 234, 235-36 (Nev. 1986).

There is a clear need and basis for discovery as to other similar misconduct. Where a carrier's in-state misconduct replicates prior transgressions, it may be punished more severely. *See Campbell v. State Farm Mut. Auto. Ins. Co.*, 65 P.3d 1134, 1143, 1148 (Utah 2001), rev'd, 538 U.S. 408, 423 (2003) (a recidivist may be punished more severely than a first offender because repeated misconduct is more reprehensible than an individual instance of malfeasance).

Under Rule 406, evidence of the routine practice of an organization is relevant to prove the organization's conduct on a particular occasion was in conformity with the routine practice. FED. R. EVID. 406. *Jenkins v. J.C. Penney Cas. Ins. Co.,* 280 S.E.2d 252, 260 (W. Va. 1981)). "The existence of . . . business custom may be established by a knowledgeable witness's testimony that there was such a habit or practice." KENNETH S. BROWN, ed., 1MCCORMICK ON EVIDENCE § 195, at 786 (6th ed. 2006).

Requests #40-44 are narrowly tailored and involved the application of actions related to a specific statute - NRS 485.3091(5) - and actions taken, or not taken, by their insured following a motor vehicle collision. The requests deal with cancelling or annulling a policy. Annulling is commonly understood as to make void or null, abolish, or invalidate. Here, Defendant LOYA is choosing to use the sports term "forfeit" but the result is still the same – Defendant LOYA did not timely pay the claim, or protect their insured in both pre-litigation and during litigation.

Here, Defendant Loya may not have denied the existence of the policy, however, they certainly did not timely investigate or resolve the property damage, or injury claim, even once liability was determined. Further, by not paying the policy they are de facto annulling the policy as they are not using the policy for its intended benefit – protect their insured from personal liability or judgment. Further, Defendant LOYA was not fulfilling their statutorily required indemnity obligations.

In *Mark & Susannah Livingston Revocable Tr. V. Liberty Ins. Corp.,* 2022 WL 4181021, at *3 (D. Ariz. Sept 13, 2022) the court compelled production of other similar claims with the same

insurer. The court reasoned that the requests were "sufficiently similar to the experiences of Plaintiffs in this case and serve as at least some evidence going to the intent element of Plaintiffs' bad faith claims."

Information regarding other claims files and bad faith allegations is discoverable, particularly in those cases where the bad faith allegations involve companywide or systemic practices rather than actions of an individual claim handler. *See, e.g., Auto-Owners Ins. Co. v. C & J Real Estate, Inc.,* 996 N.E.2d 803, 806–07 (Ind. Ct. App. 2013) (holding that discovery regarding third party claims was relevant to allegations of breach of good faith). The discovery of other claims could be relevant to the insurer's intent, for purposes of punitive damages as committing certain acts "with such frequency as to indicate a general business practice" and that may be unfair claim settlement practices. *Colonial Life & Accident Co. v. Superior Court*, 31 Cal. App. 3d 785, 790 (1982).

Where, as here, the bad faith claims allege violation of a state specific insurance code, courts are even more likely to find discovery of other claims relevant. *See, e.g., AutoOwners Ins. Co.,* 996 N.E.2d at 806–07; *State Farm Mut. Auto. Ins. Co. v. Stephens*, 425 S.E.2d 577, 584-85 (W. Va.1992) (evidence of other unfair acts is relevant to establish a violation of W.Va.Code 33–11–4(9) [1985] ).

Regarding privacy concerns, the Plaintiff would have no objection to a Protective Order. The entry of a protective order would easily resolve any privacy concerns. See e.g. K*irschenman v. Auto-Owners Ins.,* 280 F.R.D. 474, 490 (D.S.D. 2012), objections overruled, No. CV 09-4190-KES, 2012 WL 13040020 (D.S.D. Apr. 18, 2012) (court found that other claims from same storm that gave rise to plaintiff's bad faith claim were relevant and that a protective order ensured that information would remain confidential, despite insurer's contention that names and other identifying information of other claimants should not be disclosed); *Aztec Life Ins. Co. of Tex. v. Dellan*a, 667 S.W.2d 911, 916 (Tex. App. 1984) ("The problem of privacy may best be handled, we believe, by an in camera inspection of the indicated files by the district court and the issuance of a protective order, if needed.").

DRUMMOND LAW FIRM
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM

The requested discovery related to this motion is narrowly tailored in time to five (5) years, narrowly tailored by jurisdiction to Nevada, and narrowly tailored in scope to similar issues to the present case, and even limited to ones that resulted in underlying litigation against their insured, or against Defendant LOYA. The requested discovery from Defendant LOYA concerns other cases where they failed to follow reasonable standards for promptly investigating and processing insurance claims based on alleged post-collision failure to cooperate. Further, to learn whether their related misconduct replicates prior transgressions. Further, whether the related bad faith allegations involve companywide or systemic practices. Further, whether the related conduct was done "with such frequency as to indicate a general business practice."

## III.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Honorable Court issue an Order compelling that Defendant LOYA produce the documents responsive to Requests for Production No. 40-45.

DATED this 11th day of July, 2025

**DRUMMOND LAW FIRM**

By: _____//SIGNED CWD//_____
Craig W. Drummond, Esq.
Nevada Bar No. 11109
Joseph A. Tutone, Esq.
Nevada Bar No. 16333
3325 West Sahara Avenue
Las Vegas, Nevada 89102
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b)(2)(E) and LR 5—1 the undersigned does hereby certify that on this 11th day of July, 2025, service of a true and correct copy of the foregoing **PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** was duly made on all parties herein by causing a true copy thereof to be filed and/or served with the Clerk of the Court using the CMECF E-File and Serve System, which was served via electric transmission per Service List.

SCHNITZER JOHNSON & WATSON, CHTD.
M. Bradley Johnson, Esq.
8985 S. Eastern Ave., Suite 200
Las Vegas, NV 89123
*Attorneys for Defendant*
*LOYA INSURANCE COMPANY*

_____//JT//_____
An Employee of DRUMMOND LAW FIRM

**DRUMMOND LAW FIRM**
3325 W. SAHARA AVENUE
LAS VEGAS, NV 89102
WWW.DRUMMONDFIRM.COM