M. BRADLEY JOHNSON, ESQ.
Nevada State Bar No. 4646
bjohnson@sjwlawfirm.com
SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, NV 89123
(702) 362-6666 - Telephone
(702) 362-2203 - Facsimile
*Attorneys for Defendant*
LOYA INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MUHAMMAD BIN MUSA ALI individually,

Plaintiff,

v.

LOYA INSURANCE COMPANY, a foreign corporation; BRIANNA WALTON, an individual,

Defendants.

Case No. 2:24-cv-01949-CDS-EJY

**DEFENDANT LOYA INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

COMES NOW, Defendant LOYA INSURANCE COMPANY (Hereinafter "Defendant"), by and through its attorney of record, M. BRADLEY JOHNSON, ESQ. of SCHNITZER JOHNSON & WATSON, CHTD. and hereby submits its Opposition to Plaintiff's Motion to Compel. This opposition is based upon the papers and pleadings filed herein, the following Memorandum of Points and Authorities, the Declarations of Christopher Bennett and M. Bradley Johnson, the exhibits attached hereto, and any arguments entertained by the Court at the time of hearing.

Dated this _24th_ day of July, 2025

SCHNITZER JOHNSON & WATSON, CHTD.

M. BRADLEY JOHNSON, ESQ.
Nevada State Bar No. 4646
8985 S. Eastern Ave. Suite 200
Las Vegas, NV 89123
*Attorneys for Defendant Loya Insurance Company*

1

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

## I.    INTRODUCTION

Plaintiff Ali's motion is based on a false premise: namely, that Loya annuls or cancels insurance policies, denies their existence, or otherwise denies coverage in the middle of a third-party claim if an insured fails to cooperate. Not only is that not Loya's general practice, more importantly, Loya did not do any of those things during *Ali's* underlying insurance claim. In fact, in this case, Loya tendered the limits of its policy to Ali. Thus, the requested documents are wholly irrelevant.

Moreover, as discussed further below, Loya does not track claims that involve these purported issues. Therefore, even if Ali's requests sought relevant materials – which they do not – Loya would need to spend anywhere from 450 to 900 hours manually reviewing over 1,800 claims covering an eight-year time span. The immense burden that would impose is not proportional to the needs of the case and far outweighs the minimal probative value any theoretical responsive documents would have. These are further reasons why the Court should deny Ali's motion.

Background Facts: Ali was injured in a car accident caused by Loya's insured Brianna Walton. After Ali sued Walton, Loya tried to defend her. But Walton continuously failed to cooperate with Loya and the defense attorneys, including never providing verified discovery responses. This resulted in the court striking Walton's answer and entering a $110,000 default judgment against her. Loya has tendered the combined $45,000 policy limits to Ali – consistent with Nevada's absolute liability statute – but he refused to accept that payment.

Ali filed this bad faith action to recover his entire $110,000 judgment against Walton. As an affirmative *legal defense* to Ali's claims, Loya has asserted that Walton forfeited her right to coverage by failing to cooperate with Loya – which, under Nevada law, is a condition precedent to receive coverage under the policy. Without coverage, Walton (and her assignee Ali) cannot sue Loya for bad faith.

To be clear, Loya never cancelled or annulled Walton's policy. Nor did it deny its existence or otherwise refuse to provide Walton with coverage. To the contrary, despite her

2

failure to cooperate, Loya tried to defend Walton throughout the entirety of the underlying lawsuit. That is why Ali's motion is fatally flawed.

Ali's Discovery Motion: Ali seeks to compel Loya to review all of its litigated claims over the past *eight years* and produce: (1) correspondence where Loya cancelled/annulled an insurance policy, or otherwise refused to provide coverage, after an insured failed to cooperate; and (2) "arbitration findings" (whatever that means) where an insured "alleged" that Loya denied the existence of an auto policy. There are multiple reasons why these requests are improper:

1) Again, Loya did not cancel or annul Walton's policy. Nor did Loya deny her coverage for the underlying lawsuit. Quite the opposite. The fact that Loya is now asserting Walton's failure to cooperate as a *legal defense* to Ali's bad faith claims is not the same thing. Ali does not – because he cannot – cite a single case where a court permitted discovery into other insurance claims that are not sufficiently similar to the specific insurance claim at issue. That is because courts (including those cited by Ali) have consistently held the opposite.

2)      Loya's assertion of a failure-to-cooperate defense *in this ligation* is absolutely privileged under Nevada's litigation privilege. Thus, Loya's assertion of a defense based on Walton's failure to cooperate cannot, as a matter of law, serve a the basis a bad faith liability. Needless to say, discovery on a theory of liability that is not legally viable – because it is covered by Nevada's litigation privilege – should not be permitted.

3) Even if Ali's requests sought relevant documents, they are not proportional to the needs of the case. The amount in controversy (i.e., less than $100,000) hardly justifies Ali's insistence that Loya search through eight years' worth of other claim files. Furthermore, Ali never explains why he needs the requested documents to prove his case. Ali contends that Walton's failure to cooperate is irrelevant because of Nevada's absolute liability statute. But that is a pure issue of law for the Court to decide. Ali does not even attempt to explain how Loya's handling of other unrelated claims would have any bearing on that legal issue. Indeed, Ali's reliance on Nevada's absolute liability statute is self-defeating: that statute is the reason that Loya does not cancel or annul policies during a claim when insureds fail to cooperate. In addition, from a factual standpoint, what happened in other claims does not speak to whether

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

Walton satisfied her duty to cooperate with Loya. Finally, Ali's requests would impermissibly invade the privacy of non-party insureds and claimants whose private information, including privileged defense communications, would be implicated by the responsive documents.

4) Relatedly, the burden and expense that Loya would incur just to try to identify potentially responsive documents grossly outweighs any minimal probative value those documents would have. Loya does not have a general practice of cancelling/annulling policies or disclaiming coverage in the middle of a third-party claim due to an insured's failure to cooperate. Consistent with that, Loya does not track claims that could theoretically involve those issues – and certainly not ones where someone merely "alleged" those issues arose. Therefore, just to identify potentially responsive documents from the past eight years of litigated claims, Loya would need to manually review over 1,800 claims, which would take anywhere from 450 to 900 hours. Courts have consistently denied production requests that would require insurers to review thousands of claim files just to respond.

5) Finally, the inevitable result of Ali's requested discovery is that it will devolve into a series of mini-trials every time he seeks to introduce a document from an unrelated claim. That's because, to defend itself, Loya will have to explain what happened in the other claims to justify why its conduct was reasonable. The Court should decline Ali's invitation to transmogrify this straightforward bad faith action into a sideshow about other unrelated insurance claims.

For any or all of these reasons, the Court should deny Ali's motion.

## II.   FACTUAL BACKGROUND

In November 2022, Ali was allegedly injured in a car accident that he claims Walton caused. (*See* Ex. A [Complaint] at ¶ 10-12, 16 attached to the Declaration of Brad Johnson.) At that time, Walton was insured under a Loya auto insurance policy with a $25,000 per-person bodily injury liability limit and $20,000 property damage limit. (*See* Ex. B [Declaration] to Johnson Decl. at ¶ 3.)

Ali eventually filed a personal injury action against Walton (the "Underlying Action"). Per the terms of the policy, Walton had a duty to "[c]ooperate with [Loya] in the investigation,

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

settlement or defense" of that action. (*See* Ex. C [Policy] to Johnson Decl. at pp. 20-21.) But she never did.

Notably, when Ali served written discovery on Walton, she ignored the defense attorneys' attempts to contact her to discuss the same. Therefore, the defense attorneys could not gather the necessary information to serve verified responses to that written discovery. This ultimately resulted in the court striking Walton's answer and entering a default judgment against her for $110,000. Ali then obtained a judicial assignment of Walton's rights against Loya and filed this bad faith lawsuit.

Although Loya has tendered $45,000 to Ali – which represents the combined bodily injury and property damage policy limits owed under Nevada's absolute liability statute – he has refused to accept that payment and insisted on pursuing this bad faith action to recover the entirety of his judgment against Walton. (*See* Exs. D and E to Johnson Decl.)

One of the legal defenses that Loya has asserted in this case is that by failing to cooperate with her own defense, Walton failed to satisfy a condition precedent to coverage, which precludes her (or her assignee Ali) from suing Loya for bad faith.

## III. DISCOVERY REQUESTS AT ISSUE

Rather than restate the entirety of the requests at issue and Loya's responses (which Ali did in his motion), in sum, Ali seeks documents from litigated claims between November 2017 to the present, which can be categorized into three groups.

- letters where Loya was "alleged" to have annulled or cancelled a policy, or where Loya "represented" it would be doing so, based on something that happened after an accident;

- letters that Loya sent to insureds or third-party claimants denying coverage due to the insured's lack of cooperation or communication; and

- "arbitration findings" where an insured "alleged" that Loya improperly denied the existence of a policy.

## IV. THE COURT SHOULD DENY ALI'S MOTION

### A. Ali seeks documents that are not relevant to the issues in this case

A foundational limitation on discovery is that the information sought must be "relevant to any party's claim or defense," not just the subject matter of the case. *In re Williams-Sonoma,*

*Inc.*, 947 F.3d 535, 539 (9th Cir. 2020); Fed. R. Civ. P. 26(b)(1).

"A showing of 'good cause' adequate to warrant expanding the scope of discovery beyond the 'claim or defense' limitation must demonstrate the broader inquiry is justified by the particular needs of the case." *Collins v. JC Penney Life Ins. Co.*, 2003 WL 25945842, at *1 (S.D. Cal. May 6, 2003) (denying request for documents from other claim files because it would not prove that insurer committed bad faith against the plaintiff, the request was overly burdensome, implicated third parties' privacy rights, and the costs outweighed the probative value); *see also, Siegfried v. Loya Ins. Co.*, 2021 WL 5054646 (D. Nev. November 1, 2021) (following *Collins*).

Applying these principles in the context of an insurance lawsuit where discovery seeks other unrelated claim files, numerous courts (including those cited by Ali) have consistently held that the other claims must be sufficiently similar to the claim at issue to justify such discovery. *See Mead Reinsurance Co. v. Superior Ct.*, 188 Cal. App. 3d 313, 319-20 (1986)[1] (noting with "incredulity" that a plaintiff's request for claim files for a six-year period was improper absent a showing that the other claims were "even remotely the same factually as plaintiff's" claim) (quoting *Nelson v. Superior Ct.*, 184 Cal. App. 3d 444, 452-53 (1986) (discussing standards for seeking files from other accidents/claims: "Without a showing the other accidents were or might have been even remotely similar in nature to his own, plaintiff failed to show his request was reasonably calculated to discover admissible evidence.")); *Colonial Life & Accident Ins. Co. v. Superior Ct.*, 31 Cal. 3d 785, 791 (1982) (discussing how discovery into other claims may be appropriate if "the acts that harmed [the plaintiff]" were the same ones committed in other claims – e.g., where the same adjuster negotiated similar settlements); *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 629 (1992) ("Other courts have recognized that in a bad faith claim against an insurance carrier, previous *similar acts* can be shown to demonstrate that the conduct

---

[1] Where Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Eichacker v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1145 (9th Cir. 2004); *see also generally Allstate Ins. Co. v. Miller*, 125 Nev. 300 (2009) (looking to California law for guidance on insurance issues). This is because "Nevada looked to California law when it established the implied covenant of good faith and fair dealing in the insurance context." *Landow v. Medical Ins. Exch. of Cal.*, 892 F. Supp. 239, 240 (D. Nev. 1995) (citing *U.S. Fidelity & Guaranty Co. v. Peterson*, 91 Nev. 617 (1975)).

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

was intentional.") (emphasis added); *San Diego Unified Port Dist. v. Underwriters at Lloyd's*, 2016 WL 4496824, *2 (S.D. Cal. May 26, 2016) (denying motion to compel because, among other reasons, "the [plaintiff's] discovery requests are tantamount to a fishing expedition for irrelevant coverage determinations and policy interpretations involving other insureds under other factual circumstances"); *Mark & Susannah Livingston Revocable Tr. v. Liberty Ins. Corp.*, 2022 WL 4181021, at *3 (D. Ariz. Sept. 13, 2022) (noting that discovery into other claim files may be allowed "so long as the request is appropriately narrow in scope and the other claims are 'sufficiently similar' to the insured's experiences such that they become relevant to the issue of intent").

Here, Ali's discovery requests seek documents for eight years' worth of unrelated claims on issues that have nothing to do with what actually happened in Ali's specific claim based on a purported legal theory that Loya is not asserting (i.e., that Walton's failure to cooperate excuses Loya from paying its policy limits).

Requests 40-42 seek letters where Loya represented that it was annulling or cancelling a policy, or where an insured "alleged" that Loya improperly annulled or cancelled a policy. However, Loya never annulled or canceled Walton's policy.

Requests 43-44 seek letters where Loya represented to an insured or third-party claimant that Loya was not providing coverage due to the insured's failure to cooperate. But Loya never refused to provide Walton with coverage. To the contrary, Loya honored coverage and tried to defend her throughout the entirety of the Underlying Action (notwithstanding her failure to cooperate).

Request 45 seeks "arbitration findings" where an insured "alleged" that Loya improperly denied the existence of a policy. Loya did not do that either. Rather, it acknowledged the policy and provided Walton with a defense.

Ali simply cannot dispute that Loya did not do any of these things during the underlying claim. In fact, he admits that "Loya may not have denied the existence of the policy." (Motion, p. 12.) That is for good reason. Nevada's absolute liability statute precludes Loya from cancelling policies for failure to cooperate—which is why Loya does not do so in Nevada. *See*

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

N.R.S. § 485.3091, subsection 5.(a).

So, instead, Ali tries to conflate Loya's assertion of Walton's failure to cooperate as *an affirmative legal defense* in this bad faith action as the equivalent of annulling or canceling the policy. Unsurprisingly, he cites no case law to support his novel assertion. That Ali fails to cite any authority is not surprising: an insurer's assertion of an affirmative defense is covered by the litigation privilege and cannot serve as the basis for a bad faith claim. *See Rios v. Progressive N. Ins. Co.*, 137 Nev. 956, at \*4 (Nev. App. 2021) (unpublished) (litigation conduct cannot serve as the basis of an insurance bad faith case); *Nies v. Nat'l Auto. & Cas. Co.*, 199 Cal. App. 3d 1192, 1201 (1988) (insurer's pleadings, filed in defense of a bad faith claim, were irrelevant to show insurer acted in bad faith in underlying claim).

Moreover, under Nevada law, the insured's duty to cooperate is a condition precedent to receiving coverage in the first place and may be asserted as a legal defense in an action on the policy – including a bad faith failure-to-settle action brought by the insured's assignee (i.e., exactly what Ali has done here). *See Butler*, __ F. Supp. 3d ___, 2025 WL 901796, at \*2 & \*6 (D. Nev. March 24, 2025) (discussing conditions precedent and concluding: "[The insured] did not cooperate with [the insurer's] requests regarding her claim and case, thus failing to fulfill the conditions precedent necessary to receive coverage and to sue [the insurer] under her policy.").

Ali's fallback argument that Loya's alleged mishandling of his claim is the same as annulling or cancelling the policy likewise fails. Obviously, if Loya handled Ali's claim it did not cancel/annul the policy or otherwise deny coverage. Ali's real issue with Loya is that it did not settle his claim sooner. But that is different from refusing to acknowledge there is a valid policy in the first place.

In sum, because the underlying claim did not involve any of the coverage issues that are the subject of Requests 40-45, they do not seek relevant documents and must therefore be denied.

**B.      Ali's requests are not proportional to the needs of this case**

Relevance is not the sole factor for discoverability. *See Benton v. BBBB Bonding Corp.*, 2025 WL 19993597, at \*2 (E.D. Cal. July 17, 2025) ("Relevance, however, does not establish

Schnitzer Johnson & Watson, Chtd.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

discoverability." )    To be discoverable, the request must also meet the proportionality requirements of Rule 26(b)(1).  In *Siegfried v. Loya Ins. Co.*, 2021 WL 5054646, at *3 (D. Nev. Nov. 1, 2021), this court explained that there is a six-factor test to determine whether a request is proportional:

> (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Here, this is a straightforward, single-plaintiff insurance bad faith failure-to-settle case. This case is not a class action and has no broader implication than the two parties involved. Moreover, the amount at issue is less than $100,000 – Ali obtained a judgment of $110,000, of which Loya tendered the undisputed amount of $45,000 (though Ali refused to accept it).  In other words, this is a run-of-the-mill bad faith case between an insurer and an insured's assignee with a relatively low amount in dispute.

Despite that, Ali seeks to conduct discovery into eight years' worth of litigated claims, which implicates over 1,800 files.  (See Declaration of Christopher Bennett ["Bennett Declaration"] at ¶ 8.)  As explained in more detail below, reviewing those files for potentially responsive documents – if they exist at all – would be extremely time consuming and costly. This court has previously held that requests requiring a similar onerous search would be disproportional even when more than $3 million was at stake. *See Siegfried*, 2021 WL 5054646 at *4-5.

Ali's requests are even more disproportional when considering that the responsive documents would have no bearing on the merits of Loya's failure-to-cooperate defense.  Ali contends that Walton's failure to cooperate is irrelevant because of Nevada's absolute liability statute.  That, however, is a pure issue of law for the Court to decide.  Moreover, from a factual standpoint, coverage issues that may have arisen in other, unrelated claims will not prove or disprove whether Walton failed to cooperate with Loya's defense of her in the Underlying Action. *See Collins*, 2003 WL 25945842 at *5 (noting similar issues with discovery that sought other claim files as another basis for denying motion to compel).

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

Finally, Ali's requests implicate private and potentially privileged information of non-parties. Ali wants Loya to produce communications that Loya had with its insureds about ongoing liability claims against them. That could implicate a host of sensitive information, including, but not limited to, their identities, the nature of the claimant's bodily injury claims (including potentially private medical information) and, most importantly, communications with the defense attorneys assigned to represent the insureds in those other claims (which would be privileged). As recognized in *Siegfried*, "Nevada lack[s] the safeguards to protect insured's privacy in cases like these," which further weighs against allowing this type of overbroad discovery. 2021 WL 5054646 at *5.

In sum, even if Ali's requests sought relevant documents – they don't – those requests are not proportional to the needs of this case. Stated differently, this is the classic example of a plaintiff trying to make a mountain out of a molehill.

### C.    Ali's requests are unduly burdensome

Putting aside lack of relevance and disproportionality, the Court should deny Ali's motion for a third, independent reason: the burden and expense that Loya would have to incur to identify and produce the requested information grossly outweighs any minimal probative value the requested documents might have.

As an initial matter, Loya would be remiss if it didn't point out that it is far from clear whether Loya even has any documents responsive to Ali's requests. Contrary to Ali's insinuations, Loya does not have a general practice of denying coverage, let alone annulling or cancelling policies, in the middle of a third-party claim. Instead, if an insured fails to cooperate, Loya's practice is to address that (if necessary) after the third-party claim/lawsuit is concluded. (Bennet Decl., ¶ 4.) Therefore, even if Loya were forced to go down the rabbit holes that Ali seeks to explore, it is unlikely anything would be turned up.

That said, even if there were theoretically responsive documents, trying to locate them would take an overwhelming amount of time and expense. Loya does not track claims that involve insureds who fail to communicate or cooperate, policies that are "cancelled" or "annulled," or where someone has merely "alleged" those things have occurred. Nor does Loya

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

track claims involving "arbitration findings" (whatever that means), let alone ones where someone merely "alleged" that Loya wrongfully denied the existence of an insurance policy. Loya's claims handling software also does not have the ability to search for any such claims.[2] (Bennett Decl., ¶¶ 5-7.)

Instead, to determine whether there are any documents responsive to the Ali's requests, Loya would have to manually review over 1,800 files. Even assuming that it would take only 15-30 minutes per file – a conservative estimate given that litigated claims can often span several years resulting in hundreds, if not thousands, of pages of claim notes and claim file materials – that means that Loya would need to assign a qualified adjuster to spend anywhere from 456 to 912 hours (or 57 to 114 days) trying to determine whether any responsive documents even exist in the first place. This would be extremely disruptive to Loya's business as it would need to pull qualified adjusters off their pending claims and task them with conducting this file review. (*Id.* at ¶¶ 8-11.)

Moreover, to the extent that there are responsive documents, Loya would have to incur additional expenses and fees to have its attorneys review the documents to: (1) ensure the documents are responsive; and (2) take appropriate steps to protect and/or redact any personal and confidential information about other claimants or insureds who are not parties to this lawsuit. (*Id.* at ¶ 12.)

In sum, the burden imposed on Loya by these requests would be enormous.

Numerous federal courts in this Circuit (including this one) have denied production requests where, as here, an insurer would be forced to review thousands of claim files and documents to comply with the request. *See, e.g.*, *Siegfried*, 2021 WL 5054646 at *4-5 ("Because the tenuous relevance of Plaintiff's [discovery] is not sufficient to overcome the burden it would impose on Defendant, the Court denies Plaintiff's motion to compel responses to these requests."); *Collins*, 2003 WL 25945842 at *6-7 (finding that "the overly burdensome response requirements, the implications for third parties' privacy rights, and the associated costs to [the

---

[2] Loya is not required to maintain a list or database of claims that can be searched by issue involved. Plaintiff's insinuation otherwise lacks any basis in law.

insurance company] outweigh [plaintiff's] showing of relevance and need for the [requested] discovery" in an insurance bad faith action); *Ricotta v. Allstate Ins. Co.*, 211 F.R.D. 622, 624 (S.D. Cal. 2002) (refusing to order insurer to respond to discovery that would require review of tens of thousands of claim files for responsive reports); *Dobro v. Allstate Ins. Co.*, 2016 WL 4595149, at *8 (S.D. Cal. Sept. 2, 2016) ("Defendant also has established that it is unable to conduct the electronic search requested by Plaintiffs . . . and that it would be extremely expensive and time consuming to conduct the manual search that would be required. . . . Plaintiffs' assertion that some . . . files may contain relevant claims is insufficient to justify the extremely time- and labor-intensive search of Defendant's files."); *J & M Assocs., Inc. v. Nat'l Union Fire Ins.*, 2008 WL 638137, at *6 (S.D. Cal. Mar. 4, 2008) (finding that the burden and expense of the requested discovery outweighed its likely benefit, "notwithstanding [the court's] finding that the requests sought relevant information," where defendant insurance company provided an affidavit "demonstrate[ing] that [it] would incur enormous burden" if it were required to respond to plaintiff's discovery requests); *see also Mead*, 188 Cal. App. 3d at 318 & 320-21 (reversing order requiring production of claim files for a six-year period because it "falls on the side of oppression" due to the "massive extent of the burden which the request entailed").

And so it is here, the burden and expense of the Ali's requested discovery far outweighs its likely benefit – in particular, due to the (at best) tenuous relevance of the requested documents.

### D.      Evidence from "other claims" will trigger a series of mini-trials

Ali contends that "other claims" discovery may show that Loya's conduct in his underlying claim was part of a larger pattern and practice of allegedly bad faith conduct. Putting aside that there are no pattern or practice allegations in Ali's complaint, ironically, Ali's admission that this is why he seeks the requested documents is actually another reason why the Court should deny this motion.

Ali seeks correspondence regarding certain cancelled or annulled policies, denials of coverage due to insureds' lack of cooperation, or instances where Loya denied the existence of policies. But without more, that correspondence has no context. As explained in *Collins*: "The

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

lynchpin is not whether [the insurer] denied claims similar to [plaintiff's] but rather whether the denials were appropriate, on the facts and circumstances of each particular case." 2003 WL 25945842 at *5.

Thus, even if Ali obtained the requested correspondence, the most he could do with it is merely insinuate that they show a pattern and practice of bad faith. Indeed, some of Ali's requests seek documents that simply "alleged" that Loya did something wrong. (*See* Plaintiff's Requests for Production at 40 & 45.) Obviously, allegations don't prove anything.

To defend itself, Loya would then have to introduce additional information from those claim files to show why it took the position it did and why that position was reasonable. And therein lies the problem. As recognized by this court, that "will necessarily place the facts of each claim at issue." *Siegfried*, 2021 WL 5054646 at *5.

The inevitable result of Ali's requested discovery is that it will devolve into a series of mini-trials with respect to each document from an unrelated claim that Ali seeks to offer into evidence. *See Abueg v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 5503114, at *6 (D. Nev. Oct. 30, 2014) ("[T]his Court does not believe that collateral 'mini-trials' regarding medical opinions rendered in other claims can be easily avoided if the validity or invalidity of those opinions is to be fairly considered"). As one court aptly observed:

> Without question, if evidence of other claims were allowed by the court, there would be, in effect, a mini-trial on each such claim. That is wholly unacceptable where the only claims that are material are the claims of the plaintiff in this litigation. In sum, the admission of such evidence would be unduly time-consuming, unfairly prejudicial and unnecessarily confusing and will not be permitted.

*Burley v. Homeowners Warranty Corp.*, 773 F.Supp. 844, 858 (S.D. Miss. 1990); *see also Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 745 F.Supp.2d 1380, 1384 (S.D. Fla. 2010) ("there is also a real danger that if the Court were to allow Plaintiff free rein to inquire about prior claims and defenses, Defendant would be forced to retry all of these other claims in an effort to show why the facts in those particular cases supported Defendant's particular positions"); *Nationwide Mut. Ins. Co. v. Lafarge Corp.*, 1994 U.S. Dist. LEXIS 3851, at *21-22 (D. Md. Jan. 3, 1994)

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

("Before the evidentiary value of any "findings" of violations by [the insurer] of state statutes or state common law could be properly weighed by the jury, details concerning each and every one of these other cases would have to be developed at trial. . . . If [the insured] sought to introduce documents reflecting adverse findings in evidence at the trial, [the insurer] would be entitled to introduce in evidence a wealth of detail concerning the nature and circumstances of each of these prior cases. The result would be a satellite trial of each such case during the trial of this civil action."); *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989) ("To compel the production of the files of other insureds not only involves enormous inconvenience and management difficulties, but also entails a frightening potential for spawning unbearable side litigation").

In sum, the Court should decline Ali's invitation to transmogrify this straightforward, single-plaintiff bad faith case into a sideshow that would put on trial Loya's claims handling in any number of unrelated claims.

## V.   CONCLUSION

Ali seeks to conduct discovery into issues that have nothing to do with what actually happened in his underlying claim. That is because Loya never tried to cancel/annul Walton's insurance policy, nor did Loya refuse to provide her with coverage or deny the existence of her policy. This alone is sufficient reason, without more, to deny this motion.

But that is not the only problem with Ali's discovery requests. The whole purpose of this discovery is to try to impose liability based on its assertion of an affirmative defense in this case, which is protected by the litigation privilege.

Moreover, Ali's requests are disproportional to the needs of the case and would impose an immense burden and expense on Loya just to try to search for potentially responsive documents, which would far outweigh the minimal (if any) probative value of the requested materials.

Finally, to allow this discovery would invariably result in an unwieldy series of mini-trials about Loya's conduct in entirely unrelated claims.

For any or all of these reasons, the Court should deny Ali's motion.

Dated this _24th_ day of July, 2025

SCHNITZER JOHNSON & WATSON, CHTD.

M. BRADLEY JOHNSON, ESQ.
Nevada State Bar No. 4646
8985 S. Eastern Ave. Suite 200
Las Vegas, NV 89123
*Attorneys for Defendant Loya Insurance Company*

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

15

SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
(702) 362-6666

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 25th day of July, 2025 I served a copy of the foregoing **DEFENDANT LOYA INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** by submitting it to the above-entitled Court for electronic filing and service upon the Court's Service List for the above-referenced case, to the following:

Craig W. Drummond, Esq.
Joseph A. Tutone, Esq.
DRUMMOND LAW FIRM
3325 W. Sahara Ave.
Las Vegas, NV 89102

An employee of SCHNITZER JOHNSON & WATSON, CHTD.

16