M. BRADLEY JOHNSON, ESQ.
Nevada State Bar No. 4646
bjohnson@sjwlawfirm.com
SCHNITZER JOHNSON & WATSON, CHTD.
8985 S. Eastern Ave., Ste. 200
Las Vegas, NV 89123
(702) 362-6666 - Telephone
(702) 362-2203 - Facsimile
*Attorneys for Defendant*
LOYA INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MUHAMMAD BIN MUSA ALI individually, | Case No. 2:24-cv-01949-CDS-EJY |
| Plaintiff, | **DECLARATION OF CHRISTOPHER BENNETT IN SUPPORT OF DEFENDANT LOYA INSURANCE COMPANY'S MOTION TO COMPEL** |
| v. | |
| LOYA INSURANCE COMPANY, a foreign corporation; BRIANNA WALTON, an individual, | |
| Defendants. | |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

-1-                                    Case No. 2:24-cv-01949-CDS-EJY

## DECLARATION OF CHRISTOPHER BENNETT

I, Christopher Bennett, declare:

1.      I have personal knowledge of the matters set forth in this declaration and, if called as a witness, I could and would competently testify as to the truth and accuracy of the facts contained herein.

2.      I am currently employed as a Casualty Department Manager for Loya Insurance Company and have been employed with Loya since 2017.  My department oversees the handling of third-party claims that result in litigation against our insureds.  Part of my role is to oversee the handling of those claims and provide input on issues that may arise, including potential coverage issues such as an insured's failure to communicate or cooperate with Loya when defending against a third-party claim.

3.      I have reviewed Plaintiff's Requests for Production Numbers  40-45 that were served in this case, which I understand to seek:

- Number 40: claims, letters, or demands made against Loya where Loya's insured alleged "that Loya cancelled or annulled an insurance policy based on a post-collision violation of the policy"

- Number 41: letters or emails where Loya represented to their insured "that they were cancelling or annulling a policy for something alleged to have occurred after the occurrence of the injury or damage"

- Number 42: letters or emails where Loya represented to a third-party "that they were cancelling or annulling a policy for something alleged to have occurred after the occurrence of the injury or damage"

- Number 43: letters or emails where Loya represented to their insured "that they were not providing coverage based on a lack of cooperation or communication after the occurrence of the injury or damage"

- Number 44: letters or emails where Loya represented to a claimant "that they were not providing coverage for a collision based on a lack of cooperation or communication with their insured after the occurrence of the injury or damage"

- Number 45: "arbitration findings, where an insured, or heir counsel, alleged that [Loya] wrongfully or improperly denied the existence of personal automobile insurance coverage following a collision.  This includes any such findings irrespective of whether a lawsuit was filed related to the dispute."

4.     As an initial matter, generally speaking, Loya does not have a practice of disclaiming coverage, or cancelling or annulling a policy, while Loya is handling an ongoing third-party claim even if there are issues with the insured's failure to communicate or cooperate with Loya.  Instead, Loya's general practice is to continue handling the claim and defending the insured (typically under a reservation of rights), and then address any failure to communicate or cooperate (if necessary) after the third-party claim/lawsuit is concluded.  Because of that, and based on my years of experience, I am not aware of any claims that would involve documents responsive to Requests Nos. 40 through 44.

5.     But even if there was theoretically a claim that involved that type of issue, Loya does not have any readily available means of identifying any such claims.  That is because Loya does not track claims involving insureds who fail to communicate or cooperate, policies that are "cancelled" or "annulled," or claims where someone has merely "alleged" that occurred.  Nor does Loya's claims handling software have the ability to search for any such claims.  Instead, Loya would need to manually review individual claim files to determine if they involved an issue of the insured failing to communicate or cooperate or the cancelling or annulling of a policy.  Once identified, Loya would then need to review all correspondence in that particular claim to determine if it would be responsive to Requests Nos. 40 through 44.

6.     As for Request No. 45, I am not aware of any claims where an insured or their counsel "alleged" that Loya "wrongfully or improperly denied the existence of personal automobile insurance coverage following a collision" where that issue would be resolved via arbitration.  This is particularly true with respect to coverage for third-party bodily injury claims.  Therefore, I do not believe that there would be any "arbitration findings" responsive to Request No. 45.

7.     But even if there was theoretically such an arbitration finding, similar to Requests Nos. 40 through 44, Loya does not track claims involving arbitration

-3-                          Case No. 2:24-cv-01949-CDS-EJY

findings, let alone ones where someone "alleged" this specific issue. Nor does Loya's claims handling software have any ability to search for any such claims. Instead, Loya would need to manually review a given claim file to determine if it involved an arbitration, whether the arbitrator issued a "finding," and if so, whether the insured or their counsel ever "alleged" that there was a wrongful denial of the existence of coverage.

8. For context, from November 2017 to the present (which, based on the language of the requests, I understand to be the relevant timeframe), more than 27,000 third-party claims were presented to Loya in Nevada. If those claims are then limited to ones categorized as a litigated file, that reduces the total number of claims to 1,824. It is possible that additional claims were also litigated but not categorized as such due to a recent change in which type of adjusters handle litigated files. However, identifying any additional litigated claims would require a manual review of thousands of additional files. Focusing on just the 1,824 claims categorized as having been litigated, there are no other tracking metrics or categories that would allow Loya to identify among those 1,824 claims which ones involved the issues encompassed by Requests Nos. 40 through 45. Instead, that would require a manual review of each file.

9. Conservatively, it would take at least 15-30 minutes for a qualified adjuster to (i) review an entire file to determine if it involved the above-noted issues, (ii) if so, assess whether there were any potentially responsive documents within that file, and then (iii) compile any such responsive documents. However, it could take significantly longer depending on the length and complexity of a given claim file and the amount of documents or correspondence contained within it since litigated claims can often span several years resulting in hundreds, if not thousands, of pages of claim notes and claim file materials.

10. Using the conservative estimate of 15-30 minutes per claim, multiplying that by the 1,824 litigated third-party claims in Nevada from November

-4-                                    Case No. 2:24-cv-01949-CDS-EJY

2017 to the present, that would take 27,360 to 54,720 minutes (or 456 to 912 hours) to search for documents potentially responsive to Requests Nos. 40 through 45. Assuming a standard 8-hour work day, that equates to a qualified adjuster spending between 57 to 114 days to complete this search depending on how long each individual file review takes.

11. Conducting such a search would also be extremely disruptive to Loya's business. Qualified Loya adjusters would need to be pulled off their pending claims and tasked with conducting the review. Putting aside the significant cost and expense, Loya would not feel comfortable retaining a third-party vendor to conduct this type of review, as it requires familiarity with Loya's claim files and substantive insurance law principles, as well as private information about insureds and/or third parties within the claim files.

12. In addition to the time, expense and disruption of having Loya conduct such a massive search and review, Loya would then be forced to incur additional expenses and fees to have its attorneys review any located documents to make sure they are (i) responsive to the requests, and (ii) take appropriate steps to protect and/or redact any personal and confidential information regarding other claimants or insureds who are not parties in this lawsuit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 24, 2025 at San Antonio, Texas.

Christopher Bennett