UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Muhammad Bin Musa Ali<br><br>　　　　Plaintiff<br><br>v.<br><br>Loya Insurance Company, et al.,<br><br>　　　　Defendants | Case No. 2:24-cv-01949-CDS-EJY<br><br>Order Granting Plaintiff's<br>Motion to Remand and Denying Without<br>Prejudice as Moot Plaintiff's Motion to<br>Compel<br><br>[ECF Nos. 5, 16] |

　　　　Plaintiff Muhammad Bin Musa Ali brings this insurance action against defendants Loya Insurance Company and Brianna Walton alleging (1) breach of contract, (2) violation of Nevada's Unfair Claims Practice Act, and (3) contractual and tortious breach of the covenant of good faith and fair dealing against Loya and requesting an injunction against waste pursuant to Nevada Revised Statute (NRS) § 21.240 against Walton. *See generally* Compl., ECF No. 1-2. This case was originally filed in the Eighth Judicial District Court, Clark County, Nevada. *See id.* On October 18, 2024, Loya removed this case to this court. Pet. for removal, ECF No. 1. Ali filed a motion to remand. Mot. to remand, ECF No. 5. Loya opposes the motion. Opp'n, ECF No. 8.[1] For the following reason, Ali's motion to remand is granted.

I.　　Background[2]

　　　　This case stems from a car accident that occurred on November 20, 2022. ECF No. 1-2 at ¶¶ 10–12. Ali was driving "at or near" Silverado Ranch Boulevard and the IR15 northbound on-ramp in Las Vegas, Nevada. *Id.* at ¶ 10. While driving, Ali was struck by Walton. *Id.* at ¶¶ 12–13. Ali alleges that Walton caused the accident because she "failed to keep a proper lookout, failed to operate her vehicle reasonably and safely, and failed to use due care." *Id.* at ¶ 12. Before Ali and

---

[1] The motion is fully briefed. *See* Reply, ECF No. 10.
[2] Unless otherwise noted, the court only cites to Ali's complaint (ECF No. 1-2) to provide context to this action, not to indicate a finding of fact.

Walton had the chance to exchange insurance, Walton allegedly fled the scene. *Id.* at ¶ 13. At the time of the collision, Walton was covered under a bodily injury liability policy with Loya. *Id.* at ¶ 18. Before this litigation was filed, Ali alleges that Loya "represented that there was an active insurance coverage for the subject November 20, 2022 collision and assigned Claim Number 80-279892." *Id.* at ¶ 19.

Ali requested at least $15,147.00 for medical specials and on August 14, 2023, Loya offered Ali a total of $7,441.00 to resolve his claims. *Id.* at ¶ 20. Ali then filed suit in state court relating to the underlying collision against Walton on August 23, 2023; Walton was represented by attorneys who were also "staff counsel for Loya Insurance Group." *Id.* at ¶¶ 21, 22. Throughout litigation, Walton failed to respond to any discovery or appear at hearings. *Id.* at ¶¶ 23–25. Ali ultimately obtained a judgment against Walton for $110,801.42. *Id.* at ¶ 27. Ali was also judicially assigned Walton's bad faith rights against Loya. *Id.* Ali then filed this lawsuit. Despite attempting personal service, Ali was unable to serve Walton. Pl.'s aff. of compliance for sub. serv., ECF No. 1-4 at ¶ 3. Therefore, Ali served the Director's Office of the State of Nevada, Department of Motor Vehicles (DMV) pursuant to NRS 14.070(1). *Id.* at ¶ 5. Ali requests that the court enjoin Walton from selling any real or personal property so that Ali can ultimately recover the $110,801.42 from her. ECF No. 1-2 at ¶¶ 69–75.

## II.     Legal standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a case is filed in state court between parties who are citizens of different states, and the amount in controversy is at least $75,000, the defendant may remove the case to federal court. 28 U.S.C. §§ 1332, 1441, 1446. But there is a strong presumption against removal jurisdiction, and "federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). The defendant always has the burden of establishing that removal is proper. *Id.*

"Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant." *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). But "[i]n determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Id.* (citing *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)).

**III.   Discussion**

In his motion to remand, Ali argues that this court does not have jurisdiction over this case because Walton is a citizen of Nevada and removal was thus barred by the "forum defendant rule."[3] ECF No. 5 at 5. He also argues that even if the court finds that Walton was fraudulently joined and disregards her citizenship, Loya is a citizen of Nevada so there is still no diversity of citizenship. *Id.* at 8. Ali also requests attorney's fees in connection with the removal. *Id.* at 9.[4] In response, Loya puts forth several reasons as to why removal was proper. *See generally* ECF No. 8. I address each argument in turn.

**A.   NRS 14.070**

Loya first argues that Walton is not properly joined because Ali failed to properly serve her. *Id.* at 5. Ali invoked NRS 14.070 to serve Walton. ECF No. 1-2 at ¶ 21. NRS 14.070 "allows a plaintiff to serve a motorist involved in a crash on Nevada roads who cannot be found within the state by leaving a copy of the service process, along with a $5 fee, with the DMV." *Heagens v. Ganon*, 2025 U.S. Dist. LEXIS 133999, at * 3 (D. Nev. July 15, 2025) (citing NRS 14.070). Service is only deemed "sufficient" when the plaintiff (1) sends notice of service and a copy of the process by registered or certified mail to the defendant; (2) receives a return receipt signed by the defendant or a U.S.P.S. return stating that the defendant refused to accept delivery or could not

---

[3] "The forum defendant rule, contained in 28 U.S.C. § 1441(b)(2), prohibits removal based on diversity jurisdiction 'if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Casola v. Dexcom, Inc.*, 98 F.4th 947, 950 (9th Cir. 2024) (quoting § 1441(b)(2)).

[4] Requesting two forms of relief in one motion violates this district's local rules. *See* LR IC 2-2(b). Although improper, I nonetheless address the request below for judicial efficiency. Ali is cautioned that that all parties must comply with the Local Rules.

3

be located, or that the address was insufficient; and (3) files an affidavit of compliance with the original process and return receipt attached. *Id.* (citing NRS 14.070(2)). Loya argues that (1) NRS 14.070 does not apply in this case as this is a breach of contract and bad faith action against Loya and therefore does not arise out of the "use and operation of a motor vehicle" and (2) Ali failed to comply with the requirements of NRS 14.070(2) as Ali's Affidavit of Compliance with Substitute Service does not attach a signed certified mail receipt, nor does it contain any indicia from the postal service demonstrating that Walton would not accept delivery or her address was wrong. ECF No. 8 at 5–6.

In his reply, Ali argues that NRS 14.070 does apply because the statute applies to all cases "growing out of [the use and operation of a motor vehicle] or resulting in damage or loss to person or property." ECF No. 10 at 2. Ali argues that Loya's statement that the claim must "arise out of the use and operation of a motor vehicle" misconstrues the standard put forth in § 14.070. *Id.* Ali also argues that service was proper and explains that he filed a subsequent affidavit of compliance which provides a photo of the returned summons and complaint with the words "insufficient address unable to forward" on the envelope. *Id.* at 4; *see* Aff., ECF No. 9 at ¶ 5; photo, Pl.'s Ex. 2, ECF No. 9-2. Ali also states that he did mail a certified copy of the summons and complaint to Walton, but for unknown reasons the green receipt card has not been returned to him from the United States Postal Service (USPS). ECF No. 10 at 4. He explains that, according to the USPS website, the status of his certified mail is "Information Available Soon." *Id.*; *see* USPS tracking, Pl.'s Ex. 1, ECF No. 9-3.

I turn first to whether Ali's decision to serve Walton pursuant to NRS 14.070 was proper. "When a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law." *Whidbee v. Pierce Cnty.*, 857 F.3d 1019, 1023 (9th Cir. 2017). As the Supreme Court of Nevada has not decided the question as to whether NRS 14.070 applies in insurance actions stemming from a car accident, I must predict how the state's highest court would decide the question. *See High Country Paving Inc. v.*

4

*United Fire & Cas. Co.*, 14 F.4th 976, 978 (9th Cir. 2021) ("If the state's highest appellate court has not decided the question presented, then we must predict how the state's highest court would decide the question.").

The Supreme Court of Nevada has made clear that when interpreting a statute, the analysis "begins and ends with the statutory text if it is clear and unambiguous." *Blackburn v. State*, 294 P.3d 422, 425 (Nev. 2013). Additionally, the court gives "those words their plain and ordinary meaning unless the context requires a technical meaning or a different meaning apparent from the context." *Lofthouse v. State*, 467 P.3d 609, 611 (Nev. 2020). The court only goes beyond the statute's language "when the language lends itself to two or more interpretations that are reasonable considering the text, context, and structure." *Id.* at 612.

With those guidelines in mind, I now analyze whether an insurance breach of contract and bad faith claim in this case is one "growing out of [the use and operation of a motor vehicle] or resulting in damages or loss to person or property[.]" NRS 14.070(1). I find NRS 14.070(1) to be unambiguous and see no reason to look beyond the statute's language when interpreting it. The phrase "growing out of" is understood to encompass "arising out of," "originating from," and "flowing from." *See L.A. Lakers, Inc., v. Fed. Ins. Co.*, 869 F.3d 795, 801 (9th Cir. 2017).[5] Further, the Supreme Court of Nevada, has emphasized that the "growing out of" requirement for § 14.070 demands a connection between the action and the "accident[ ] or collision[ ]." *Hayashida v. Second Jud. Dist. Ct.*, 357 P.2d 117, 119 (Nev. 1960).

I predict that the Supreme Court of Nevada would find that this insurance action "grows out of" the use and operation of a motor vehicle. But for Ali's collision with Walton, this case would not exist; Ali would have no cause of action. Therefore, there is a sufficient connection between Ali's action against Loya and Ali's car accident with Walton such that the Supreme

---

[5] Ali takes issue with Loya's argument that the claim must "arise out of" the operation or use of a motor vehicle because the phrase "arise out of" does not appear in the statute. ECF No. 10 at 2. However, as "arising out of" and "growing out of" have similar meanings, this is a distinction without a difference.

Court of Nevada would likely find this action "grew out of" the originating accident, so Ali's use of the procedure outlined NRS 14.070 when effectuating service on Walton was proper.[6]

I now turn to whether Ali properly complied with the procedural requirements of NRS 14.070. As explained, the statute requires a party to

1) leave a copy of the process with a $5 fee with the Director of the DMV;

2) send, by registered or certified mail, notice of service and a copy of the process to the defendant;

3) file a return receipt signed by the defendant (or a return of the United States Postal Service indicating that defendant could not be located); and

4) file an affidavit of compliance with the district court.

*Carter v. Andrews*, 2016 Nev. LEXIS 513, at *6 (Nev. June 10, 2016) (citing NRS 14.070). Loya argues that Ali failed to comply with these requirements because he did not provide a return receipt signed by Walton or a return from the USPS indicating that the defendant could not be located. ECF No. 8 at 6. A review of the record indicates that these items are missing from Ali's original affidavit in support of his compliance with the procedural requirements of § 14.070. However, Ali filed a subsequent affidavit on November 7, 2024, that includes a photo of Walton's summons and service that was returned from the USPS as "insufficient address unable to forward." ECF No. 9-2. Ali also explains that he has still not received the green receipt card back from the USPS and he does not have an explanation as to why. ECF No. 9 at ¶ 4. He attached a copy of the tracking information for the certified mail receipt which states "Information Available Soon." ECF No. 9-1.

The Supreme Court of Nevada has suggested that substantial compliance with the requirements outlined in NRS 14.070 would suffice in lieu of strict compliance provided the

---

[6] I also note that a court in this district has allowed a plaintiff to utilize NRS 14.070 in an action for declaratory relief seeking to adjudicate the rights and responsibilities of plaintiff insurance company and defendants insured. *Mendakota Ins. Co. v. Vargas-Antigua*, 2013 U.S. Dist. LEXIS 69089, at *8–9 (D. Nev. May 14, 2013).

6

party made a good faith attempt to comply with the requirements and did so within the 120-day service timeline.[7] *Compare Carter*, 2016 Nev. LEXIS 513, at *6 (rejecting appellant's argument that he substantially complied with the terms of the statute when he did not attempt to comply with all of the requirements). Ali filed his complaint in state court on July 30, 2024. *See* ECF No. 1-2 at 2. Therefore, pursuant to Nevada Rule of Civil Procedure 4, he had 120 days—until Wednesday November 27, 2024—to effectuate service. The record demonstrates that Ali provided the returned service from the USPS indicating that Walton could not be located on November 7, 2024. ECF No. 9. Therefore, Ali's ultimate compliance with the statute's requirements within the 120-day service window, combined with his lack of control over the return of the certified mail receipt, leads the court to believe that the Supreme Court of Nevada would find he substantially complied with § 14.070. Therefore, I find that Ali's use of § 14.070 to serve Walton in this case was proper.

### B. Fraudulent joinder

Loya next argues that Walton was fraudulently joined so that Ali could defeat diversity and force the case into state court. ECF No. 8 at 11. Specifically, Loya argues that Walton's joinder was fraudulent because Ali's sole claim—to enjoin Walton under NRS 21.240 from committing waste—is improper, as the statute only applies to waste committed from real property and Walton does not presently own nor has she appeared to ever own real property. ECF No. 8 at 8. In his reply, Ali argues that there is no evidence confirming that Walton—a non-responsive defendant—does not have real property and in the absence of that conclusive evidence, Loya has not met its heavy burden demonstrating Walton's joinder is fraudulent. ECF No. 10 at 5–6. Ali also argues that Loya conveniently ignores the fact that Ali is suing Walton under both NRS 21.240 and NRS 33.010. *Id.* at 6; *see also* ECF No. 1-2 at ¶ 71 (stating the claim was being brought "pursuant to" NRS 21.240 and NRS 33.010).

---

[7] *See* Nev. R. Civ. P. 4(e)(1).

As explained above, there a presumption against finding fraudulent joinder and "defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990) and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)). Therefore, "[c]ourts have denied a claim of fraudulent joinder when there is *any possibility* that a plaintiff may prevail on the cause of action against the in-state defendant." *Id.* (emphasis added).

As a threshold matter, NRS 33.010 merely outlines NRS 21.240 cases in which an injunction may be granted and does not automatically mean that a claim enjoining Walton is appropriate here. *See* Nev. Rev. Stat. § 33.010. Turning to § 21.240, this statute presents a cause of action to restrain a party from committing waste. Nev. Rev. Stat. § 21.240. It states, "[u]ntil the expiration of the time allowed for redemption, the court may restrain the commission of waste on the property, or . . . appoint a receiver to take charge of the property, or the proceeds thereof, by order granted with or without notice, on the application of. . .the judgment creditor." *Id.* Nev. Rev. Stat. § 21.240 also allows for a party enjoined under the statute to use the property "in the same [way] it was previously used; or to use it in the ordinary course of husbandry; or to make necessary repairs of buildings thereon; or to use wood or timber on the property therefor, or for the repair of fences, or for fuel . . . while the person occupies the property" *Id.* I find this statute to be unambiguous on its face. The references to "husbandry,"[8] making repairs of buildings "thereon," and "wood or timber" leads me to conclude that NRS 21.240 does, indeed, reference real property and not personal property. Therefore, for NRS 21.240 to apply, Walton must have real property.

Although Loya provides a records search indicating Walton has not owned real property in Nevada, I cannot say for certain that this means Walton does not own any real property

---

[8] Husbandry is defined as "agriculture or farming; cultivation of the soil for food" *Husbandry*, Black's Law Dictionary (12th ed. 2024).

anywhere. NRS 21.240 does not limit the statute to apply to only property found within Nevada. Walton's absence in this case makes this uncertainty even stronger. Therefore, although a close call, at this juncture I cannot say with certainty that there is no possibility whatsoever that a state court judge could find that a claim against Walton exists. As such, I do not find that Walton was fraudulently joined.

As Walton, a Nevada citizen, was a properly joined defendant in this action, the forum defendant rule prevents Loya from removing this action. *See* 28 U.S.C. § 1441(b)(2). Therefore, the court lacks subject matter jurisdiction over this case and remand is proper.[9]

### C. Ali is not entitled to attorney's fees.

Ali requests attorney's fees in connection with Loya's alleged improper removal. ECF No. 5 at 9. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). However, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal . . . ." *Garmong v. Maupin*, 2023 U.S. App. LEXIS 26947 at *2 (9th Cir. 2023) (internal citation omitted). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).

I find that Ali is not entitled to attorney's fees for Loya's removal. Loya argues that its decision to remove was objectively reasonable as it relied on case law and provided evidence which it believes supported removal. ECF No. 8 at 9. I agree. As I stated above, the decision to find Walton was not fraudulently joined was a close call. I find Loya's decision to remove was objectively reasonable. Ali's request for attorney's fees is denied.

---

[9] As I find joinder is proper here, I do not consider Ali's argument about Loya's citizenship.

IV.     Conclusion

IT IS THEREFORE ORDERED that Ali's motion to remand **[ECF No. 5] is GRANTED.**

IT IS FURTHER ORDERED that Ali's request for attorney's fees is DENIED.

The pending motion to compel **[ECF No. 16] is denied without prejudice as moot**.

The Clerk of Court is kindly instructed to remand this case, Case No. A-24-898713-C, to the Eighth Judicial District Court, Department 2, and to close this case.

Dated: August 28, 2025

_____
Cristina D. Silva
United States District Judge